GARRETSON, Appellee and Cross–Appellant,

v.

S.D. MYERS, INC., Appellant and Cross–Appellee.

[Cite as *Garretson v. S.D. Myers, Inc.* (1991), 72 Ohio App.3d 785.]

Court of Appeals of Ohio,
Summit County.

No. 14762.

Decided March 6, 1991.

*David M. Benjamin,* for appellee and cross-appellant.

*John N. Childs* and *Lee M. Wood,* for appellant and cross-appellee.

CACIOPPO, Presiding Judge.

Appellee and cross-appellant, William Garretson, was employed by appellant and cross-appellee, S.D. Myers, Inc. (Myers), from late 1986 to January 13, 1989. During the term of Garretson's employment, Myers maintained a profit sharing arrangement whereby employees would receive a portion of the company's profits accumulated in the previous year. If an employee was not in the employ of Myers at the time of the profit distributions, he did not receive a payment. The purpose of the plan, as alleged by Myers, was to induce employees to remain with the company, thereby reducing the costs associated with employee turnover.

Following his resignation, Garretson was informed that he would not receive an upcoming payment. Garretson brought suit, alleging that he was due payment under the profit sharing plan and that he was entitled to recovery based upon Myers' failure to produce a copy of a summary of the plan. The case proceeded to trial following the denial of Myers' motion for summary judgment. The trial court found in Garretson's favor on count one of the complaint seeking payment and dismissed count two, which sought recovery due to Myers' failure to produce a written copy of the plan.

### Assignment of Error I

"The trial court erred in not granting the defendant's unopposed motion for summary judgment."

■ It is Myers' contention in this assignment of error that the trial court erred by failing to grant its motion for summary judgment because said motion was unopposed.

As aptly stated by the Supreme Court of Ohio in *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, at 47, 517 N.E.2d 904, at 907:

" * * * This rule provides in part that ' * * * [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.' Thus, it might appear that the nonmoving party *must* respond to an adverse motion for summary judgment or face the entry of judgment against him. However, this court has stated that even where the nonmoving party fails *completely* to respond to the motion, summary judgment is improper unless reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party. * * *. Accordingly, as the burden is upon

the moving party to establish the non-existence of any material factual issues, the lack of a response by the opposing party cannot, of itself, mandate the granting of summary judgment." (Emphasis *sic.*)

We have reviewed the appellant's motion for summary judgment and cannot conclude that the trial court's denial of summary judgment was improper within the framework outlined in *Morris.* While the appellant's motion for summary judgment and accompanying affidavit addressed many of the elements of the appellee's case, we cannot conclude that it was of such a nature as to mandate the granting of summary judgment.

Accordingly, the first assignment of error is overruled.

### Assignment of Error II

"The trial court erred in holding that the defendant's profit-sharing plan was void as against public policy."

■ A review of the record in the case at bar discloses that the trial court failed to state its reasoning in its entry awarding judgment to the appellee. The transcript, however, reveals that the trial court based its decision on public policy grounds. At the end of the trial, the court stated from the bench:

"Now, was this a—apparently a, some type of an oral contract and it was pretty one-sided, apparently employees didn't know much about the terms and so forth. It's my opinion that any terms in that type of a contract that requires that the employee would have to be working for the company in the year following when the profit was made would be void as against public policy. The guy could have died, he could have moved away, he could have various reasons not to be there and I think the man is entitled to his percentage of whatever it is the money the company made in 1988 and, therefore, I'm granting judgment to the plaintiff for $1248 plus $119 interest for 18 months, making $1367. Costs taxed against the Plaintiff. See journal."

■ While this court recognizes the importance of the principle of public policy, we do not believe that it was properly invoked in the case at bar. Public policy is a legal principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare. *Chickerneo v. Society Natl. Bank* (1979), 58 Ohio St.2d 315, 320, 12 O.O.3d 298, 300–301, 390 N.E.2d 1183, 1186. The principle of public policy must be applied with caution and limited to those circumstances patently within the reasons upon which the doctrine rests. *Id.* At best, public policy is an uncertain and indefinite term. *Lamont Bldg. Co. v. Court* (1946), 147 Ohio St. 183, 185, 34 O.O. 73, 74, 70 N.E.2d 447, 448. When judges come to apply the principle of

public policy, they must proceed with caution so as to not infringe on the parties' rights to make contracts which are not clearly opposed to some principle or policy of the law.  *Id.*

It is difficult to perceive how the plan in the case at bar, which has as its purpose employee retention, is violative of public policy.  Due to the malleable nature of the principle of public policy, the principle is subject to abuse when a court is unable to properly articulate a legally supportable rationale for its decision.  In the case at bar, the trial court failed to exercise the caution required before invoking the principle of public policy.

Appellee attempts to persuade this court to follow the case of *McKelvey v. Spitzer Motor Ctr.* (1988), 46 Ohio App.3d 75, 545 N.E.2d 1311.  While there are factual similarities between *McKelvey* and the case at bar, we do not find the rationale of *McKelvey* convincing in the case *sub judice.*  In *McKelvey,* the profit sharing plan in question was a written plan distributed to the employees, while the plan in the case at bar was an oral, discretionary plan. In addition, the timing of the distribution called for under the plan in *McKelvey* was entirely dependent upon the happening of a fortuitous event, the completion of the annual audit, while distributions under the Myers plan, if they were to be made, were to occur in February, May and August.

As the trial court improperly invoked the principle of public policy, the second assignment of error is well taken.

### Cross Assignment of Error

"The trial court erred in determining that cross-appellant could not pursue a claim against cross-appellee for cross-appellee's violation of the Federal Employee Retirement Income Security Act in State court."

█ The Employee Retirement Income Security Act (ERISA) permits an individual to maintain a civil action to recover benefits due under a plan, to enforce rights under a plan, to clarify rights to future benefits under a plan, and to obtain other relief provided by ERISA.  Section 1132(a), Title 29, U.S.Code.  The term "plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  Section 1002(3), Title 29, U.S.Code.  An employee welfare benefit plan is a plan, fund, or program maintained or established for the purpose of providing "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services," or "any benefit described in section 186(c) of this title."  Section 1002(1), Title 29, U.S.Code.  An employee pension benefit plan

is a plan, fund or program that "provides retirement income to employees," or "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond * * *." Section 1002(2)(A), Title 29, U.S.Code.

A review of the Myers plan indicates that it does not fall within the definitions of plans covered by ERISA. The plan does not provide any of the benefits of an employee welfare pensions benefit plan, nor does it provide retirement income or income to employees which extends to their termination or beyond. Accordingly, the trial court could properly refuse to grant relief under ERISA.

The transcript of proceedings reveals the following colloquy between Garretson's attorney and the trial court:

"THE COURT: Your complaint sets forth a contract of employment between the Plaintiff and the Defendant?

"MR. BENJAMIN: That's correct, Your Honor.

"THE COURT: That's what I'm looking at, the contract of employment. It sets up a retirement fund or whatever kind of fund you call it. That's one thing and then the Plaintiff is going to have to, you know, carry out the terms of his agreement.

"MR. BENJAMIN: I understand that, Your Honor.

"THE COURT: I don't know whether—I don't know but I don't know at this point whether I'm prepared to give any penalty under some Federal Statute. I didn't know that.

"MR. BENJAMIN: Fine, Your Honor.

"THE COURT: Go ahead.

"MR. BENJAMIN: Those are our two complaints, those are our two causes of action. We ask the Court to consider them both."

While this discussion may indicate a concern on the part of the trial court as to the applicability of ERISA, it by no means forecloses such recovery or the introduction of evidence concerning such recovery. The transcript indicates that Garretson essentially failed to produce evidence concerning his ERISA claim during the trial. As such, the court, even if ERISA did in fact apply, was without a sufficient basis upon which to premise recovery.

In addition, a review of the journal entry of the court dismissing the count concerning the ERISA claim indicates that it was furnished by Garretson and was in fact signed as approved by counsel for Garretson.

For the aforementioned reasons, Garretson's cross-assignment of error does not have merit and is hereby overruled.

The judgment of the trial court is reversed.

*Judgment reversed.*

REECE and VICTOR, JJ., concur.

WILLIAM H. VICTOR, J., retired, of the Ninth Appellate District, sitting by assignment.